**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X
ALEXANDER ARCHER BROWN,

                           Plaintiff,

                -against-

DESMOND BROWN, *et al.*,

                      Defendants.
-------------------------------------------------------------------X

|  |  |
|---|---|
|  | **REPORT &** |
|  | **RECOMMENDATION** |
|  |  |
|  | **25-CV-4883 (GHW) (JW)** |

**To the Honorable Gregory H. Woods, United States District Judge:**

Plaintiff Alexander Archer Brown, proceeding *pro* se, brings this Action against Defendants Desmond Brown, Trevor Patton, Della Patton, Asia Patton, Marisha Gordon, Lorraine Gordon, Noel Gordon, North Bronx Seventh-Day Adventist Church ("North Bronx SDA Church"), Google LLC ("Google"), Apple LLC ("Apple"), and White Plains Hospital (collectively, the "Defendants"). Pending before the Court are motions to dismiss by (1) Defendant Apple at Dkt. No. 24; (2) Defendants Desmond Brown, Trevor Patton, Della Patton, Asia Patton, Marisha Gordon, Lorraine Gordon, and Noel Gordon (collectively, the "Individual Defendants") at Dkt. No. 54; (3) Defendant Google at Dkt. No. 56; (4) Defendant White Plains Hospital at Dkt. No. 68; and (5) Defendant North Bronx SDA Church at Dkt. No. 62. For reasons stated more fully below, the Court finds that the amended complaint is frivolous and therefore recommends that Defendants' motions to dismiss be **GRANTED** and the case be closed.

## BACKGROUND

### A. Procedural history

On June 10, 2025, Plaintiff commenced this action by filing a complaint. Dkt. No. 1. He paid the filing fee on the same day. On June 12, 2025, this case was referred to this Court for general pretrial purposes and all dispositive motions requiring a report and recommendation. Dkt. No. 6.

On July 7, 2025, Plaintiff filed an amended complaint on his own accord, which is the operative pleading. Dkt. No. 13 ("Am. Compl."). On July 18, 2025, Defendant Apple filed a motion to dismiss. Dkt. No. 24–25. On September 9, 2025, Individual Defendants, Google, White Plains Hospital, and North Bronx SDA Church filed separate motions to dismiss. Dkt. Nos. 54–65. On September 18, 2025, Plaintiff filed an omnibus memorandum of law in opposition to all Defendants' motions to dismiss. Dkt. No. 68 ("Pltf.'s Opp."). On September 24, 2025, Apple, North Bronx SDA Church, White Plains Hospital, and Individual Defendants filed separate replies. Dkt. Nos. 70-73. On September 25, 2025, Google filed its reply. Dkt. Nos. 74. The Court considers all motions to dismiss fully briefed.

### B. The amended complaint

The following allegations are taken from (1) the amended complaint, which is 103 pages long, including attachments; and (2) Plaintiff's opposition memorandum, which is 84 pages inclusive of attachments.[1] Plaintiff includes as attachments to the

---

[1] The Court's "mandate to read the papers of *pro se* litigants generously makes it appropriate to consider [a] plaintiff's additional materials, such as [the] opposition

amended complaint two "personal statement[s]": one that is 28 pages (see Am. Compl. at 59–89); and another that is 14 pages, "submitted for the record" and addressed to "Your Honor and members of the jury." See Am. Compl. 89–103.

The amended complaint includes allegations regarding multiple events spanning four years. The Court has attempted to summarize Plaintiff's allegations and has limited its summary to those allegations relevant to Plaintiff's enumerated causes of action against named Defendants.

Plaintiff brings suit against the following Defendants: (1) Individual Defendants, who comprise of Plaintiff's family members and former friends, church, and community members (see Am. Compl. ¶¶ 2–8); (2) North Bronx SDA Church, (3) Apple, (4) Google, and (5) White Plains Hospital.

Plaintiff alleges experiencing multiple incidents, spanning from 2021 to 2025 and across different cities that were "disturbing and coordinated incidents, which [] were driven by jealousy, control, religious manipulation, and financial motive among members of his family, religious community, and others." Id. at ¶ 21. He alleges that "Defendants' actions reflect[] an orchestrated attempt to silence Plaintiff, discredit

---

memorandum." Williams v. Barometre, No. 20 Civ. 7644 (KMK), 2022 WL 903068, at *2 n.4 (S.D.N.Y. Mar. 28, 2022) (quotation marks and citation omitted); see also Floyd v. Rosen, No. 21 Civ. 1668 (KMK), 2022 WL 1451405, at *3 (S.D.N.Y. May 9, 2022) (considering exhibits attached to *pro se* opposition memorandum). The Court may consider factual allegations raised in a *pro se* plaintiff's opposition "to the extent that those allegations are consistent with the Amended Complaint," and will do so here. Veras v. Jacobson, No. 18 Civ. 6724 (KMK), 2020 WL 5659551, at *1 n.1 (S.D.N.Y. Sept. 23, 2020).

his standing, interfere with his role as a mandated reporter, and endanger both his and his mother's safety." Pltf.'s Opp. at 1.

Plaintiff alleges multiple instances where he was drugged, had his phone stolen, had his financial accounts accessed without his consent, was poisoned, and was illegally surveilled. Am. Compl. ¶¶ 21–25, 28–29, 34–37. In many of these instances, Plaintiff does not name who was involved. The Court includes names where available.

- In June 2021, Plaintiff was drugged after consuming a drink while at a social event in Fullerton, California and thereafter "lost consciousness and awoke on the side of the road with his shoes removed, keys and phone stolen, and his pant pockets cut open." Id. at ¶ 22.

- In February 2023, Plaintiff's phone was stolen while he was in Las Vegas, Nevada. Id. at ¶ 31. An "impersonator" sent messages to Plaintiff's phone contacts and "received thousands of dollars" from these unauthorized requests. Id.

- In July 2023, Plaintiff was again drugged "after consuming a single drink" at Mango's Tropical Café in Miami, Florida, and subsequently woke up on the street without his phone. Id. at ¶ 23. His stolen phone "was used to log into Plaintiff's personal accounts . . . from unauthorized locations." Id. at ¶ 24. Plaintiff later tracked his phone to Brooklyn, New York, where he has "only limited connections, raising serious concerns about targeted surveillance." Id. at ¶¶ 27–28. This "same device was used to access Plaintiff's shared Google

4

Home and door camera system, allowing strangers to watch Plaintiff and his disabled mother, Charmaine Brown, inside their Bronx apartment." Id. at ¶ 29.

- Plaintiff's phone was stolen again in July 2023 while he was in South Beach, Miami, and "his iCloud, Google, Facebook, and Instagram accounts were repeatedly tampered with.  Plaintiff believes this was a targeted campaign to socially isolate him and seize control of his social media accounts, digital records, and ultimately, his estate." Id. at ¶ 30.

Plaintiff further alleges that "Defendants coordinated in gang stalking, including real-world surveillance, forced alienation from family, reputation attacks, and narrative manipulation." Id. at ¶ 48.  For instance, when trying to contact the hospital during his mother's November 2024 hospitalization at White Plains Hospital, hospital staff told him that his mother "does not have a son" and subsequently placed Plaintiff under psychiatric hold, "allegedly due to false mental health claims circulated by individuals close to the Defendants." Id. at ¶¶ 35–36.  Hospital staff then "compelled" Plaintiff to undergo unnecessary mental health questioning, including inquiries about "hallucination[] and social ideation, fabricating a narrative of instability." Pltf.'s Opp. at 6.  Plaintiff asserts that he "believes these actions were orchestrated in coordination with his relatives seeking to discredit him and control his mother's affairs." Id.

Plaintiff also alleges that "Defendants, including Trevor Patton and members of the North Bronx SDA Church, spread false rumors that Plaintiff was using drugs,

hallucinating, or experiencing undiagnosed psychological disorders." Am. Compl. ¶¶ 37–38.  Plaintiff asserts that these statements were defamatory and led to "social alienation, career loss, and estrangement from longstanding community members and professional connections." Id. at ¶ 40.

Plaintiff also avers instances in which he believes his mother was under "psychological manipulation" or under surveillance. Id. at ¶ 45.  For instance, in early 2023, Plaintiff recounts "feeling very strange, with symptoms including disorientation and discomfort" after drinking water at his mother's home, which "raised serious concerns." Id. at ¶ 32.  During that same time period, Plaintiff "began noticing behavioral inconsistencies and contradictions in statements made by his mother, which added to his suspicion that she may have been pressured, manipulated, or recorded without her full awareness." Id.  For instance, while attending a funeral in November 2024 at North Bronx SDA Church, his mother gave "hesitant and fearful responses after encountering Plaintiff . . . and later claimed to have used a distant restroom despite others being available leading Plaintiff to suspect she was intimidated or coached." Id. at ¶ 44.  Plaintiff also alleges that North Bronx SDA Church intentionally withheld video evidence from the funeral of "aggressive or suspicious interactions between [Defendant] Desmond Brown," non-party Victor Brown, and Plaintiff's mother in order to "cover up psychological coercion or potential abuse." Id. at ¶¶ 42–43.

Plaintiff also alleges instances in which unknown persons–one dressed as an Amazon driver, and another man in black clothing–were recorded via his Google

Home camera approaching his home.  Id. at ¶ 46.  Plaintiff alleges that his mother stated, "'they move fast,' indicating fear and familiarity."   Id.   Plaintiff alleges another instance where, moments after Defendant Della Patton asked him, "Are you the one running in the green jacket?" an individual ran past in a green jacket, "suggesting real-time tracking or surveillance."  Id. at ¶ 47.

Plaintiff further asserts that Defendants Lorraine Gordon, Marisha Gordon, and Noel Gordon "coordinated" to tamper with his mother's trust in November 2024, including removing Plaintiff as his mother's power of attorney.  Id. at ¶¶ 52–53.  He further alleges that in November 2024, Defendants attempted to poison him at a bar operated by Defendant Marisha Gordon because "he discovered a sharp aluminum soda can tab at the bottom of his drink[,] an object which could only have been placed deliberately."  Id. at ¶ 51.  He asserts that the timing of the incident, "immediately following the signing of estate documents . . ., underscores the financial motive behind the conspiracy."  Pltf.'s Opp. at 6.

### a.  References to persons not named as Defendants in this action

Throughout the amended complaint, Plaintiff alleges facts regarding non-parties, without any context.  For instance, Plaintiff alleges that after he woke up after being drugged in Fullerton, California in June 2021, "[a] witness, Savanna, later informed Plaintiff that she contacted Reginald Louis, a known associate of Darnell Gordon, to return and help, but he refused."  Am. Compl. ¶ 22.  Plaintiff asserts that Darnell Gordon was present during the 2023 phone theft in Las Vegas, "further tying

these events together." Id.  Neither Savanna nor Darnell Gordon are parties to this case.

### b. Causes of action

Plaintiff enumerates three federal claims for relief against all Defendants: (1) a Fourteenth Amendment familial association claim; (2) a conspiracy to violate civil rights claim pursuant to 42 U.S.C. § 1985; and (3) a civil Racketeer Influenced and Corrupt Organizations ("RICO") claim pursuant to 18 U.S.C. § 1964.  Plaintiff also asserts several state law causes of action for (1) invasion of privacy, (2) defamation, (3) slander, (4) elder abuse, (5) fraud and forgery, (6) identity theft, (7) intentional infliction of emotional distress, (8) medical negligence, and (9) obstruction of justice.

Plaintiff seeks a wide array of declaratory, injunctive, and monetary relief, which includes the following: compensatory damages of $10,000,000; punitive damages; a declaratory judgment "invalidating any trust or estate documents procured through fraud or coercion;" injunctive relief barring Defendants from "further contact, harassment, surveillance, or medical interference;" "an order compelling production of any withheld evidence, including video footage, electronic records, or medical logs;" "protective relief for Plaintiff's mother;" and referral "to appropriate law enforcement or prosecutorial authorities for criminal investigation." Id. at ¶¶ 114–121.

## LEGAL STANDARD

### A. Rule 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must allege sufficient facts, taken as true, to state a plausible claim for relief." Johnson v. Priceline.com, Inc., 711 F.3d 271, 275 (2d Cir. 2013) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007). "[A] complaint does not need to contain detailed or elaborate factual allegations, but only allegations sufficient to raise an entitlement to relief above the speculative level." Caldwell v. Sutton, No. 19 Civ. 5236 (VEC), 2020 WL 4057750, at *2 (S.D.N.Y. July 20, 2020) (citing Keiler v. Harlequin Enters., Ltd., 751 F.3d 64, 70 (2d Cir. 2014)).  For a Plaintiff "to 'nudge[] their claims across the line from conceivable to plausible,' they must 'raise a reasonable expectation that discovery will reveal evidence' of the wrongdoing alleged, 'even if it strikes a savvy judge that actual proof of those facts is improbable.'"  Citizens United v. Schneiderman, 882 F.3d 374 (2d Cir. 2018) (cleaned up).

Generally, the Court accepts all factual allegations in a complaint as true and draws all reasonable inferences in the light most favorable to a plaintiff. Caldwell, 2020 WL 4057750, at *2 (citing Gibbons v. Malone, 703 F.3d 595, 599 (2d Cir. 2013); In re NYSE Specialists Sec. Litig., 503 F.3d 89, 95 (2d Cir. 2007).  The Court is not, however, "bound to accept as true a legal conclusion couched as a factual allegation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555).

B. <u>Rule 8</u>

The Court is obliged to construe *pro se* pleadings liberally, <u>Harris v. Mills</u>, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," <u>Triestman v. Fed. Bureau of Prisons</u>, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted) (emphasis in original). But although *pro se* litigants enjoy the Court's "special solicitude," <u>Ruotolo v. I.R.S.</u>, 28 F.3d 6, 8 (2d Cir. 1994) (<u>per curiam</u>), their pleadings must still comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief. The complaint "should be plain because the principal function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial." <u>Salahuddin v. Cuomo</u>, 861 F.2d 40, 42 (2d Cir.1988). A complaint states a claim for relief if the claim is plausible. <u>Ashcroft</u>, 556 U.S. at 678–79 (citing <u>Twombly</u>, 550 U.S. at 555). In reviewing a complaint for plausibility, the Court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in the pleader's favor. <u>Id.</u> But the Court need not accept "[t]hreadbare recitals of the elements of a cause of action," which are essentially legal conclusions. <u>Id.</u> at 678.

While a complaint's statement of claim must contain sufficient factual detail, it should not be "prolix" (*i.e.*, lengthy) or contain unnecessary details. See <u>Salahuddin</u>, 861 F.2d at 42 (noting that, under Rule 8(a)(2), the statement of claim "should be short because '[u]nnecessary prolixity in a pleading places an unjustified

10

burden on the court and the party who must respond to it because they are forced to select the relevant material from a mass of verbiage"") (citation omitted); Prezzi v. Schelter, 469 F.2d 691, 692 (2d Cir. 1972) (holding that complaint did not comply with Rule 8 because "it contained a labyrinthian prolixity of unrelated and vituperative charges that defied comprehension"). "Complaints which ramble, which needlessly speculate, accuse and condemn, and which contain circuitous diatribes far removed from the heart of the claim do not comport with these goals and this system." Barsella v. United States, No. 90 Civ. 1815 (JES), 135 F.R.D. 64, 66 (S.D.N.Y. Mar. 18, 1991) (internal quotation marks and citation omitted). Further, "[i]t is well-established in this Circuit that plaintiffs cannot simply 'lump' defendants together for pleading purposes." Monterey Bay Mil. House., LLC v. Ambac Assurance Corp., No. 19 Civ. 9193 (PGG), 531 F.Supp.3d 673, 728 (S.D.N.Y. 2021).

C. **The Court's inherent authority to dismiss frivolous suits**

"The Court has inherent authority to dismiss an action on the Court's own motion (*sua sponte*), even when a party has paid the fees to bring the action, if the Court determines that the action is frivolous." Yi Sun v. Saslovsky, No. 19 Civ. 10858 (LTS), 2020 WL 6828666, at *2 (S.D.N.Y. Aug. 6, 2020) (collecting cases). Frivolous suits are those that lack "an arguable basis either in law or in fact." Lin v. Lin, No. 22 Civ. 09263 (RA), 2022 WL 16926295, at *1 (S.D.N.Y. Nov. 14, 2022) (quoting Neitzke v. Williams, 490 U.S. 319, 325 (1989)). "[A] court may dismiss a claim as factually frivolous where the facts alleged are clearly baseless, a category encompassing allegations that are fanciful, fantastic, and delusional." Id. (cleaned

11

up). "As those words suggest, a finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or wholly incredible, whether or not there are judicially noticeable facts available to contradict them." Id.; see also Livingston v. Adirondack Beverage Co., 141 F.3d 434, 437 (2d Cir. 1998) ("[A]n action is 'frivolous' when either: (1) the factual contentions are clearly baseless . . .; or (2) the claim is based on an indisputably meritless legal theory.").

## DISCUSSION

### A. The amended complaint is frivolous

Defendants' motions to dismiss raise several legal issues, including Plaintiff's failure to comply with Rule 8 and Rule 12(b)(6) of the Federal Rules of Procedure. However, before analyzing those arguments in depth, the court instead turns to the threshold issue of frivolousness. While Defendants do not raise arguments based on frivolousness, the Court recommends dismissing the action *sua sponte* because "the factual contentions are clearly baseless, . . . the product of delusion or fantasy." Livingston, 141 F.3d at 437.

Even when read with the "special solicitude" afforded to *pro se* pleadings, the Court finds that Plaintiff does not provide any plausible factual support for his claims. Instead, the amended complaint is rife with incoherent and irrational allegations. For one, Plaintiff frequently makes conclusory statements with either no detail or an implausible explanation. As discussed more fully above, Plaintiff alleges numerous troubling incidents, spanning multiple years and occurring in multiple states, where Plaintiff was drugged, had his phone stolen, surveilled without

12

his consent, or otherwise harmed. See Am. Compl. ¶¶ 21–25, 28–29, 34–37. While Plaintiff asserts his belief that these events were "disturbing and coordinated incidents [by Defendant and others] which [] were driven by jealousy, control, religious manipulation, and financial motive" (Id. ¶ 21), a "[p]laintiff's beliefs–however strongly he may hold them–are not facts." Nobile v. Queen Laticia of Spain, No. 23 Civ. 9081 (LTS), 2023 WL 8258336, at *2 (S.D.N.Y. Nov. 27, 2023) (citation omitted). Here, Plaintiff fails to provide *any* factual allegations connecting any of the events to each other, let alone to Defendants.

Plaintiff also makes incoherent assertions that are delusional and irrational, many of which appear to be unrelated to the claims at issue. For instance, without providing any context or additional information, Plaintiff asserts that while his mother was hospitalized at White Plains Hospital, hospital staff told him that his mother "does not have a son" and placed Plaintiff under psychiatric hold due to "false mental health claims circulated by individuals close to the Defendants." Am. Compl. ¶ 35–36. Plaintiff also alleges that he "began feeling very strange" after drinking water at his mother's home. Id. at ¶ 32.

Further, Plaintiff includes irrelevant facts involving persons who are not parties to the case or who otherwise appear irrelevant. For example, the complaint references non-parties named Savanna and Darnell Gordon, but provides little context as to who they are or how they relate to the case. See, e.g., Am. Compl. ¶ 22 (alleging that upon waking up after being drugged "[a] witness, Savanna, later

13

informed Plaintiff that she contacted Reginald Louis, a known associate of Darnell Gordon, to return and help, but he refused.").

Taken together, the amended complaints' allegations that Defendants (who comprise of a mix of Plaintiff's friends, family, church members, Apple, and Google) were conspiring against Plaintiff, "are attenuated to the point of being implausible." Kim v. New Jersey, 25 Civ. 8315 (KPF), 2025 WL 3013080, at *3 (S.D.N.Y. Oct. 28, 2025). As such, the Court finds that Plaintiff's allegations "amount to conclusory claims and suspicions that are not plausible and must be dismissed as frivolous." Id.

**B. The amended complaint does not comply with Rule 8**

Plaintiff's amended complaint should also be dismissed for the independent reason for failure to comply with Rule 8 of the Federal Rules of Civil Procedure.

Here, the 104-page amended complaint does not comply with Rule 8 because it does not provide a short and plain statement of Plaintiff's claims. Instead, and as discussed more fully above, Plaintiff's inclusion of unrelated facts and background makes it difficult for the Court, and certainly Defendants, to fully understand how the alleged facts provide a basis for Plaintiff's claims as to each individual Defendant.

Further, the amended complaint engages in impermissible group pleading when describing the alleged events, particularly for the federal conspiracy and civil RICO claims. For instance, Plaintiff asserts that Defendants collectively conspired with each other to physically, psychologically, and financially harm Plaintiff. But Plaintiff's amended complaint asserts only conclusory allegations against each Defendant and instead, makes allegations as to Defendants as if they were one. See,

14

e.g., Am. Compl. ¶ 36 (alleging that White Plains Hospital staff placed Plaintiff under a psychiatric hold "allegedly due to false mental health claims circulated by individuals close to *Defendants*.") (emphasis added); id. at ¶ 51 (asserting that "Defendants" attempted to poison him at a bar "operated by Defendant Marisha Gordon when he discovered a sharp aluminum soda can tab at the bottom of his drink."); id. at ¶ 55 (alleging that "*Defendants*. . . altered, falsified, or fabricated medical records to support forced detainment and false mental health claims.") (emphasis added).    Thus, the amended complaint fails to distinguish each Defendants' conduct, making it "virtually impossible to link the various defendants to [Plaintiff's] alleged injuries." Mendes Da Costa v. Marcucilli, 675 Fed. Appx. 15 (2d. Cir. 2017); see Farmer v. Cnty. of Westchester, No. 18 Civ. 2691 (NSR), 2021 WL 4199944, *7 (S.D.N.Y. Sept. 15, 2021) (dismissing complaint under Rule 8(a)(2) because "the vast majority of allegations" relating to the defendant were "jointly alleged against most of the other [d]efendants without providing any factual basis to distinguish their conduct").

## C. **Federal claims**

Assuming *arguendo* that Plaintiff's amended complaint is not frivolous and that it complies with Rule 8, the federal causes of action still falter for the independent reason of failing to state a claim under Rule 12(b)(6).

15

### a. Fourteenth Amendment familial association claim against all Defendants (Count I)

"The Fourteenth Amendment guarantees a substantive right under the Due Process Clause to intimate familial association." Gorman v. Rensselaer Cnty., 910 F.3d 40, 47 (2d Cir. 2018). "A claim for infringement of the right to familial association requires conduct so shocking, arbitrary, and egregious that the Due Process Clause would not countenance it even were it accompanied by full procedural protection." Id. (cleaned up). In addition, "a claim under the Due Process Clause for infringement of the right to familial associations requires the allegation that *state action* was specifically intended to interfere with the family relationship." Id. at 48 (emphasis added).

Plaintiff asserts that Defendants violated Plaintiff's fundamental right to familial association by "misrepresenting Plaintiff's identity to medical providers, obstructing his legal access to his mother [], and participating in efforts to isolate her." Am. Compl. ¶¶ 68–70. But his claim fails for three reasons. First, the amended complaint fails to allege that Defendants are state actors or that their actions constituted state action.[2] See Gorman, 910 F.3d at 47. Second, Plaintiff does not allege that any Defendants' action, whether taken by the state or private entities, was specifically intended to interfere with the family relationship—in this case, with

---

[2] While Plaintiff does not allege state action, the Court takes judicial notice that White Plains Hospital is a private, not-for-profit hospital (which is a part of Montefiore), and not a state-run facility. See White Plains Hospital – Who we are, https://www.wphospital.org/about-us/who-we-are/ (last visited Feb. 3, 2026).

16

Plaintiff's relationship with his mother.  See Moore v. City of New York, No. 22 Civ. 10957 (LGS), 2024 WL 3361193, at *6 (S.D.N.Y. July 10, 2024) (dismissing familial association claim because the complaint failed to allege such "shocking" conduct or that "state action was specifically intended to interfere with the family relationship.").  Lastly, the amended complaint fails to allege facts that Defendants' actions constituted shocking, arbitrary or egregious behavior.  See id.

The Court therefore recommends **GRANTING** Defendants' motion to dismiss as to Plaintiff's Fourteenth Amendment familial association claim.

### b.  Section 1985 conspiracy claim against all Defendants (Count II)

"To state a civil rights conspiracy under § 1985(3), a plaintiff must allege: 1) a conspiracy; 2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and 3) an act in furtherance of the conspiracy; 4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States."  Gray v. Town of Darien, 927 F.2d 69, 73 (2d Cir. 1991).  The conspiracy must be "motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus."  Cine SK8, Inc. v. Town of Henrietta, 507 F.3d 778, 791 (2d Cir.2007).  A plaintiff asserting a conspiracy claim under Section 1985 must plausibly allege "some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end."  Webb v. Goord, 340 F.3d 105, 110 (2d Cir. 2003).

Plaintiff asserts, without specific factual details, that Defendants, motivated by "jealousy, control, religious manipulation, and financial motive," "fabricated narratives of mental illness, false medical reporting, obstruction of justice, and interference with Plaintiff's legal rights and reputation" and that Plaintiff's "reputation, finances, and mental and emotional health were harmed." Am. Compl. ¶¶ 72–73.

These conclusory allegations fail to plausibly state a Section 1985 conspiracy claim for multiple reasons. First, the amended complaint fails to allege, "except in the most conclusory fashion, that any such meeting of the minds occurred among any or all of the [D]efendants." Webb, 340 F.3d at 110–11 (affirming dismissal of § 1985 claim for failure to state a claim). Second, the amended complaint makes no showing that the conspiracy was motivated by "some racial or perhaps otherwise class-based, invidious discriminatory animus." Cine SK8, Inc., 507 F.3d at 791. To the contrary, Plaintiff alleges that Defendants were motivated by "jealousy, control, religious manipulation, and financial motive." Am. Compl. ¶ 21; see Fox v. City of New York, No. 03 Civ. 2268 (FM), 2004 WL 856299, *9 (S.D.N.Y. Apr. 20, 2004). Jealousy, control, and financial motive are not considered "invidious discriminatory animus." And while "class-based animus" includes religion-based discrimination (see Colombrito v. Kelly, 764 F.2d 122, 130 (2d Cir.1985)), Plaintiff provides no facts, beyond conclusory statements, suggesting that any of Defendants' allegedly conspiratorial acts were based on Plaintiff's religious class.

18

The Court therefore recommends that the motion to dismiss the Section 1985 conspiracy cause of action be **GRANTED**.

### c. Civil RICO cause of action against all Defendants (Count III)

To establish a RICO violation, Plaintiffs must show "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Acklin v. Eichner, No. 20 Civ. 7042 (GHW), 2021 WL 4442819, at *4 (S.D.N.Y. Sept. 27, 2021) (quoting Kim v. Kimm, 884 F.3d 98, 103 (2d Cir. 2018)).  Here, Plaintiff's RICO cause of action fails for failure to plead both the existence of an enterprise and a pattern of racketeering activity.

An "enterprise" "includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."  18 U.S.C. § 1961(4).  To constitute an "enterprise," defendants must associate together for a common purpose of engaging in a particular fraudulent course of conduct, and work together to achieve that purpose.  U.S. v. Turkette, 452 U.S. 576, 583 (1981); First Cap. Asset Mgmt., Inc. v. Satinwood, Inc., 385 F.3d 159, 173–174 (2d Cir. 2004) (citations omitted). An enterprise is demonstrated by allegations "of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." Turkette, 452 U.S. at 583.  There must be some factual allegations regarding the hierarchy, organization, and activity of the alleged enterprise from which it can be inferred that its members functioned as a unit. First Cap., 385 F.3d at 174–75 (citations omitted).  The allegations in the complaint must also establish that the defendants participated in the operation or

19

management of the enterprise by having some part in directing the enterprise's affairs. Reeves v. Ernst & Young, 507 U.S. 170, 179 (1993).

"Under any prong of § 1962, a plaintiff in a civil RICO suit must establish a 'pattern of racketeering activity.'" GICC Cap. Corp. v. Tech. Fin. Grp., Inc., 67 F.3d 463, 465 (2d Cir. 1995). This means that Plaintiff "must plead at least two predicate acts [], and must show that the predicate acts are related and that they amount to, or pose a threat of, continuing criminal activity." Id. (citing 18 U.S.C. § 1961(5) and H.J. Inc. v. Nw. Bell Tel. Co., 492 U.S. 229, 239 (1989)). Additionally, Plaintiffs must adequately plead each element of a substantive RICO claim for each defendant. See DeFalco v. Bernas, 244 F.3d 286, 306 (2d Cir. 2001). That said, to be liable for a RICO violation, a defendant "need not himself have committed or agreed to commit the two or more predicate acts" constituting the RICO violations, but must have "kn[own] about and agreed to facilitate the scheme." Acklin, 2021 WL 4442819, at *4 (citation omitted).

The amended complaint contains the following allegations in support of the RICO claim: (1) that Defendants, "acting in concert" for over two years, "constitute an enterprise in interstate activity as defined by RICO"; (2) that the "enterprise carried out repeated acts of wire fraud, identity theft, forgery, obstruction of justice, and misuse of technology for illegal surveillance," and (3) that these "repeated actions over multiple years represent an enterprise engaged in criminal conduct with the intent to silence, exploit, or financially harm the Plaintiff and his mother." Am. Compl. ¶¶ 62, 74–77.

Such conclusory pleadings are wholly insufficient to state a RICO cause of action.  First, Plaintiff fails to adequately plead an ongoing joint enterprise.  Beyond lumping Defendants together and generally asserting that they used the enterprise to perpetrate illegal conduct, Plaintiff fails "to allege information regarding the hierarchy, organization, activities of the alleged enterprise, and—critically in this case—explain each participant's role in the alleged fraudulent or illegal conduct." Acklin, 2021 WL 4442819, at *4 (citing Beter v. Murdoch, No. 17 Civ. 10247 (GBD), 2018 WL 3323162, at *6 (S.D.N.Y. June 22, 2018).  "This type of slapdash group pleading is insufficient to plead the existence of an enterprise." Id. at *5 (citing Lewis v. Legal Servicing, LLC, No.19 Civ. 8085 (PAE) (OTW), 2020 WL 7390233, at *4 (S.D.N.Y. Aug. 18, 2020) ("A complaint which simply groups together the individuals and entities involved in an alleged racketeering act and calls them an enterprise is not a RICO enterprise.")).

Second, the amended complaint fails to plead a pattern of racketeering activity. Plaintiff pleads "wire fraud, identity theft, forgery, obstruction of justice, and misuse of technology" as the predicate acts, most of which are forms of "racketeering activity" for purposes of RICO. See 18 U.S.C. § 1961(1)(B).  However, the amended complaint fails to show that these predicate acts are related, or that that each Defendant knew about these illegal acts and agreed to facilitate the scheme. See Smartix Int'l Corp. v. MasterCard Int'l LLC, 06 CV 5174 (GBD), 2008 WL 4444554, *8 (S.D.N.Y. Sept. 30, 2008) (holding that racketeering activity cannot be demonstrated "by merely

21

stringing together a handful of discrete acts that allegedly were committed by at least one of the defendants").

Accordingly, the Court recommends that the motion to dismiss the RICO cause of action be **GRANTED** pursuant to Rule 12(b)(6).

### D. State claims

Because Plaintiff's federal claims fail in their entirety, this Court recommends declining to exercise supplemental jurisdiction over Plaintiff's state law claims. 28 U.S.C. § 1367(c)(3). When a district court has original jurisdiction over claims in a case, it "shall have supplemental jurisdiction over all other claims that are so related to claims in the action . . . that they form part of the same case or controversy under Article III.'" F5 Capital v. Pappas, 856 F.3d 61, 77 (2d Cir. 2017) (quoting 28 U.S.C. § 1367(a)); see also United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 725 (1966) ("Pendent jurisdiction . . . exists whenever there is a claim 'arising under [the] Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority,' and the relationship between that claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional 'case.'") (quoting U.S. Const. art. III, § 2). Claims are considered "'part of the same case or controversy' if they 'derive from a common nucleus of operative fact.'" Shahriar v. Smith & Wollensky Rest. Grp., Inc., 659 F.3d 234, 245 (2d Cir. 2011) (quoting Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc., 373 F.3d 296, 308 (2d Cir. 2004)).

22

The decision to exercise supplemental jurisdiction over a state law claim is by nature discretionary.  City of Chicago v. Int'l Coll. of Surgeons, 522 U.S. 156, 173 (1997).  Where claims satisfy the "same case or controversy" test under 28 U.S.C. § 1367(a), however, "the discretion to decline supplemental jurisdiction is available only if founded upon an enumerated category of subsection 1367(c)."  Shahriar, 659 F.3d at 245 (quoting Itar-Tass Russian News Agency v. Russian Kurier, Inc., 140 F.3d 442, 448 (2d Cir. 1998)).  Subsection 1367(c) permits a court to decline to exercise supplemental jurisdiction if:

> (1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).  Here, subsection (3) would apply if the Court dismisses all of the claims over which it had original jurisdiction.

Both the Second Circuit and the Supreme Court of the United States have "held that when the federal claims are dismissed the 'state claims should be dismissed as well.'"  In re Merrill Lynch Ltd. P'ships Litig., 154 F.3d 56, 61 (2d Cir. 1998) (quoting Gibbs, 383 U.S. at 726).  "Although this is not a mandatory rule, the Supreme Court has stated that 'in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendant jurisdiction doctrine-judicial economy, convenience, fairness and comity–will point toward

23

declining jurisdiction over the remaining state law claims.'" Id. (quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n. 7 (1988)).

Moreover, resolution of the state-law claims in state court will avoid "needless decisions of state law" by this Court, which promotes the interests of comity and justice. Moran v. Tryax Realty Mgmt., Inc., No. 15 Civ. 08570 (RJS), 2016 WL 3023326, at *4 (S.D.N.Y. May 23, 2016) (quoting Gibbs, 383 U.S. at 726). Declining to exercise supplemental jurisdiction will not be unfair. To the contrary, by declining supplemental jurisdiction over the state law claims, the Court preserves Plaintiff's opportunity to file similar claims in state court in the future. Although the exercise of supplemental jurisdiction is discretionary, an analysis of the relevant factors in the usual case "will point toward declining jurisdiction over the remaining state-law claims." In re Merrill Lynch, 154 F.3d at 61 (citing Cohill, 484 U.S. at 350 n.7). So too here.

Having considered the factors articulated in Gibbs, the Court recommends declining to exercise supplemental jurisdiction over Plaintiff's state-law claims should Plaintiff's federal causes of action be dismissed.

### E. **Leave to amend**

Generally, "*pro se* litigants should be given leave to amend a complaint if a liberal reading of the complaint gives any indication that a valid claim might be stated." Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir.2000) (citing Gomez v. USAA Fed. Sav. Bank, 171 F.3d 794, 795 (2d Cir.1999)). However, it is not required where it would be futile. Salahuddin, 861 F.2d at 42. Given the frivolous nature of

Plaintiff's amended complaint, there is no indication that Plaintiff is in possession of facts that would cure the deficiencies identified above.  See, e.g., Kim v. New Jersey, 25 Civ. 8315 (KPF), 2025 WL 3013080, at *3 (S.D.N.Y. Oct. 28, 2025) (denying leave to amend and dismissing action as frivolous because "the defects in Plaintiff's Complaint cannot be cured with an amendment); Gallop v. Cheney, 642 F.3d 364, 369 (2d. Cir 2011) (affirming denial of leave to amend because there was no "indication that [plaintiff] could—or would—provide additional allegations that might lead to a different result."); Leib-Podry v. Tobias, 22 Civ. 8614 (VEC) (JW), 2024 WL 1421152, at *10 (S.D.N.Y. Feb. 13, 2024), report and recommendation adopted, 2024 WL 1134597 (S.D.N.Y. Mar. 15, 2024) (dismissing plaintiff's complaint as time-barred and factually frivolous and therefore, declining leave to amend).

Because the Court finds that Plaintiff's amended complaint cannot be cured with an amendment, this Court recommends declining to grant leave to amend and dismissing the action.

## RECOMMENDATION

For all the foregoing reasons, the Court recommends that the Motions to Dismiss at Dkt. No. 53, 54, 56, 58, and 62 be **GRANTED** in their entirety and that the case be closed.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen days from service of this Report to file written objections.  See also Fed. R. Civ. P. 6.  Such objections, and any responses to

25

objections shall be filed with the Clerk of Court and on ECF.  Any requests for an extension of time for filing objections must be directed to Judge Woods.  **Failure to file objections within fourteen days will result in a waiver of objections and will preclude appellate review**.  See Thomas v. Arn, 474 U.S. 140 (1985); Cephas v. Nash, 328 F.3d 98, 107 (2d Cir. 2003).

SO ORDERED.

DATED:     New York, New York
                February 10, 2026

_____
JENNIFER E. WILLIS
United States Magistrate Judge

26